ACCEPTED
03-15-00518-CV
7144477
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/30/2015 1:05:10 PM
JEFFREY D. KYLE
CLERK

**CASE NO. 03-15-00518-CV**

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/30/2015 1:05:10 PM
JEFFREY D. KYLE
Clerk

_____

**CITY OF SAN MARCOS, TEXAS**
*Appellant*

v.

**SAM BRANNON, COMMUNITIES FOR TEXAS THRIVING
WATER FLUORIDE-FREE SAN MARCOS, MORGAN KNECHT AND
KATHLEEN O'CONNELL**
*Appellee*

_____

On Appeal from the 274th Judicial District Court of Hays County, Texas
Honorable R. Bruce Boyer, Judge Presiding
Trial Court Cause Number 15-1266

_____

**APPELLANT'S BRIEF**

_____

**MCKAMIE KRUEGER, LLP**
941 Proton Rd.
San Antonio, Texas 78258
210.546.2122
210.546.2130 (Fax)

William M. McKamie
State Bar No. 13686800
mick@mckamiekrueger.com

**CITY ATTORNEY**
CITY OF SAN MARCOS, TEXAS
512.393.8153
Fax 512.393.3983

ORAL ARGUMENT REQUESTED

Michael J. Cosentino
State Bar No. 04849600
mcosentino@sanmarcostx.gov
**ATTORNEYS FOR APPELLANT**

# IDENTITY OF PARTIES & COUNSEL

In order that the members of this Court may determine disqualification and recusal under the Texas Rules of Appellate Procedure, Appellant certifies that the following is a complete list of the parties, attorneys, and other persons with a financial interest in the outcome of this lawsuit:

| **Appellant:** | **Attorneys for Appellant:** |
|---|---|
| City of San Marcos, Texas | William M. McKamie<br>State Bar No. 13686800<br>McKamie Krueger, LLP<br>941 Proton Road<br>San Antonio, Texas 78258<br>210.546.2122<br>210.546.2130 (Fax)<br><br>Michael J. Cosentino<br>State Bar No. 04849600<br>City Attorney's Office<br>630 East Hopkins Street<br>San Marcos, Texas 78666<br>512.393.8150<br>855.749.2846 (Fax) |
| **Appellees:** | **Attorneys for Appellees:** |
| Morgan Knecht | Craig F. Young<br>108 E. San Antonio<br>San Marcos, Texas 78666<br>512.847.7809<br>512.393.1212 (Fax)<br>cyoung@lawyer.com |
| Sam Brannon | Lynn Peach<br>147 S. Guadalupe, Suite 101<br>San Marcos, Texas 78666<br>512.393.9991<br>888.428.0468 (Fax) |

Kathleen O'Connell and Communities for Thriving Water-Fluoride Free San Marcos

Brad Rockwell
707 Rio Grande, Ste. 200
Austin, Texas 78701
SBN 17129600
brad@LF-lawfirm.com
512-469-6000
512-482-9346 (fax)

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL ................................................................. iii

INDEX OF AUTHORITIES ............................................................................. vii

STATEMENT OF THE CASE ............................................................................1

STATEMENT REGARDING ORAL ARGUMENT ...............................................3

ISSUES PRESENTED FOR REVIEW ................................................................3

      Issue 1: The trial court's denial of the City's Plea to the Jurisdiction is error, because mandamus relief related to elections must be presented to the appellate courts in original proceeding, not a trial court.

      Issue 2: The trial court's denial of the City's Plea to the Jurisdiction is error, because a public official is a necessary party to mandamus, and Appellees failed to name a public official as a party.

STATEMENT OF FACTS ................................................................................3

SUMMARY OF THE ARGUMENT ...................................................................3

ARGUMENT & AUTHORITIES .......................................................................4

*Issue 1:* The trial court's denial of the City's Plea to the Jurisdiction is error, because mandamus relief related to elections must be presented to the appellate courts in original proceeding, not a trial court ........................................4

*Issue 2:* The trial court's denial of the City's Plea to the Jurisdiction is error, because a public official is a necessary party to mandamus, and Appellees failed to name a public official as a party. ...............................................................6

PRAYER .....................................................................................................8

CERTIFICATE OF COMPLIANCE ...................................................................9

CERTIFICATE OF SERVICE ..........................................................................9

APPENDIX ................................................................................................11

# INDEX OF AUTHORITIES

**Cases**

*Bejarano v. Moody*, 901 S.W. 2d 570 (Tex. App.—El Paso 1995, orig. proceeding), at page 571..................................................................................5

*Brooks v. Northglen Ass'n,* 141 S.W. 3d 158 (Tex. 2004) ........................................7

*In re Dorn*, 2015 Tex. LEXIS 835, 58 Tex. Sup. Ct. J. 1629 (Tex. 2015)................5

*In re Dupont*, 142 S.W.3d 528, 532 (Tex. App.—Fort Worth 2004, orig. proceeding) ............................................................................................4

*In re Link*, 45 S.W.3d 149, 156 (Tex. App.—Tyler 2000, orig. proceeding)...........4

*In re Palomo*, 366 S.W.3d 193, 194 (Tex. 2012) (orig. proceeding) .......................5

*In re Triantaphyllis*, 68 S.W.3d 861, 869–70 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding [mand. denied]) ...................................................4

*In re Vela*, 399 S.W.3d 265, 266 (Tex. App.—San Antonio 2012, orig. proceeding) ................................................................................................4

*In re Woodfill,* 2015 Tex. LEXIS 686, 58 Tex. Sup. Ct. J. 1525 (Tex. 2015, orig. proceeding)...........................................................................................4

*Sears v. Bayoud,* 786 S.W.2d 248, (Tex. 1990)........................................................5

*Strachan v. Lanier,* 867 S.W.2d 52 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding..............................................................................................5

**Rules**

Tex. R. Civ. P. 39.......................................................................................................7

**Statutes**

Local Government Code §9.004 ................................................................................6

Texas Election Code § 277.003 .................................................................................6

Texas Election Code Section 273.061 .......................................................................4

CASE NO. 03-15-00518-CV

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

_____

**CITY OF SAN MARCOS, TEXAS**
*Appellant*

v.

**SAM BRANNON, COMMUNITIES FOR TEXAS THRIVING
WATER FLUORIDE-FREE SAN MARCOS, MORGAN KNECHT AND
KATHLEEN O'CONNELL**
*Appellee*

_____

On Appeal from the 274th Judicial District Court of Hays County, Texas
Honorable R. Bruce Boyer, Judge Presiding
Trial Court Cause Number 15-1266

---

**APPELLANT'S BRIEF**

---

TO THE HONORABLE THIRD COURT OF APPEALS:

NOW COMES Appellant, CITY OF SAN MARCOS, TEXAS ("City"), and submits this appellant's brief. For clarity, unless otherwise noted, the Appellant shall be referred to as the "City," the Appellees shall retain that reference.

**STATEMENT OF THE CASE**

This case concerns a dispute regarding the validity of a petition filed with the City of San Marcos City Clerk on April 2, 2015 to place a proposed amendment to the City Charter on the ballot in a special election on November 3,

1

2015. On May 5, 2015, the City Clerk advised the City Council, sitting in Regular Meeting, that the petition could not be certified as having the requisite number of verified signatures of qualified voters of the City.

San Marcos filed this case in district court, seeking a declaratory judgment that a petition circulated and filed by Defendants and Counter-claimants to place a proposed amendment to the San Marcos City Charter on the ballot at an election in November 2015 is void (CR:4).

A month later, Sam Brannon, Kathleen O'Connell, and Communities For Thriving Water – Fluoride Free San Marcos ("Communities") filed their Original Answers and Counterclaims requesting, among other things, a writ of mandamus to compel the City to place the proposed charter amendment on the ballot at the November 3, 2015 municipal election (CR:20, 35).

All pending counterclaims for mandamus relief in this case are based on the contention that the City of San Marcos has a non-discretionary duty imposed by law -- Section 9.004 of the Texas Local Government Code -- to place their proposed charter amendment on the November 3, 2015 ballot. The City Clerk was not named as a respondent, was not served with process, and had no opportunity to appear as a party in the case. No other public official was named as a respondent.

On July 29, the City filed its Plea to the Jurisdiction primarily based upon

2

the ground that in election matters, the Texas appellate courts, not the district court, have exclusive jurisdiction over mandamus in election matters. (CR:49).

After hearing on the Plea to Jurisdiction on August 5, 2015, the Court denied the Plea by Order dated August 12. (CR:120).

The City timely filed Notice of Accelerated Appeal. (CR:121)

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument may edify the Court, and is requested by Appellant. However, the issues before the Court are neither novel nor complex.

## ISSUES PRESENTED FOR REVIEW

Issue 1: The trial court's denial of the City's Plea to the Jurisdiction is error, because mandamus relief related to elections must be presented to the appellate courts in original proceeding, not a trial court.

Issue 2: The trial court's denial of the City's Plea to the Jurisdiction is error, because a public official is a necessary party to mandamus, and Appellees failed to name a public official as a party.

## STATEMENT OF FACTS

Relevant facts appear in the Statement of the Case. The issues presented are based in law, as there are few if any disputed material facts.

## SUMMARY OF THE ARGUMENT

The trial court lacks subject matter jurisdiction over Appellees' Counterclaim seeking mandamus against the City of San Marcos because (1) jurisdiction to consider mandamus involving elections lies solely with the appellate

courts, not a trial court, and (2) a public official is a necessary party-respondent in a mandamus action, and Appellees failed to name a public official as a party in this case. The trial court's denial of the City's timely presented Plea to the Jurisdiction is error, and the Counterclaim for mandamus must be dismissed.

## ARGUMENT AND AUTHORITIES

*Issue 1:* ***The trial court's denial of the City's Plea to the Jurisdiction is error, because mandamus relief related to elections must be presented to the appellate courts in original proceeding, not a trial court.***

Section 273.061 of the Texas Election Code expressly authorizes both the Supreme Court and the Courts of Appeals to issue a writ of mandamus "to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer." These appellate courts have granted mandamus relief in numerous cases where the duties related to elections have not been performed. *See,* e.g., *In re Vela*, 399 S.W.3d 265, 266 (Tex. App.—San Antonio 2012, orig. proceeding); *In re Dupont*, 142 S.W.3d 528, 532 (Tex. App.—Fort Worth 2004, orig. proceeding); *In re Triantaphyllis*, 68 S.W.3d 861, 869–70 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding [mand. denied]); *In re Link*, 45 S.W.3d 149, 156 (Tex. App.—Tyler 2000, orig. proceeding); *In re Woodfill,* 2015 Tex. LEXIS 686, 58 Tex. Sup. Ct. J. 1525 (Tex. 2015, orig. proceeding).

4

Also, appellate courts have exercised jurisdiction in original proceedings seeking mandamus in election matters, yet denied relief. *See*, e.g., *In re Palomo*, 366 S.W.3d 193, 194 (Tex. 2012) (orig. proceeding); *In re Dorn*, 2015 Tex. LEXIS 835, 58 Tex. Sup. Ct. J. 1629 (Tex. 2015).

Appellees' filed their counterclaim in the district court, which although a court of general jurisdiction, is not mentioned in the Election Code or elsewhere as having the express authority to issue mandamus. While it is true that there are some reported examples of district courts assuming jurisdiction in election-related mandamus actions, jurisdiction was not challenged in those cases.

To the contrary, the El Paso Court of Appeals held in *Bejarano v. Moody*, 901 S.W. 2d 570 (Tex. App.—El Paso 1995, orig. proceeding), at page 571:

"Mandamus relief lies exclusively with the appellate courts of our state, not with its district courts," citing *Sears v. Bayoud,* 786 S.W.2d 248, (Tex. 1990) and *Strachan v. Lanier,* 867 S.W.2d 52 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding.

The Appellees simply sought mandamus in the wrong court, and jurisdiction fails. [Apparently having discovered their error, on August 20, 2015, three of Appellees joined Shannon Dorn as Relators in an original proceeding seeking mandamus in the Texas Supreme Court. The application was denied by the Supreme Court on September 4.] See Appendix "G".

5

Please note that each of the above-cited mandamus cases are brought against an individual official, named as the responding party.

***Issue 2:*** ***The trial court's denial of the City's Plea to the Jurisdiction is error, because a public official is a necessary party to mandamus, and Appellees failed to name a public official as a party.***

On April 2, 2015, a petition was submitted to the City of San Marcos, seeking an amendment to the City's Home Rule Charter. Local Government Code §9.004 (a) provides for an election on such a petition if it is "signed by a number of qualified voters of the municipality equal to at least five percent of the number of qualified voters of the municipality, or 20,000, whichever number is smaller." In San Marcos, it is undisputed that the requisite number of valid signatures on such a petition is 1,090 (CR: 19).

The City Clerk is responsible for verifying the signatures on a charter amendment petition. On May 5, 2015, the City Clerk reported to the City Council that the petition was insufficient and could not be certified as being signed by a sufficient number of qualified voters of the city. It is most common that the City Clerk or City Secretary perform that function, due to that office's many statutory responsibilities involving elections and voting procedures. This is acknowledged in Election Code § 277.003, which reads in part: ". . . *the city secretary* or other authority responsible for verifying the signatures . . . ." (emphasis added). In San Marcos, there is no "authority" other than the City Clerk.

6

The duty of the governing body to submit a proposed charter amendment to the voters under Local Government Code §9.004 does not arise unless and until a petition for such amendment has been signed by the required number of verified signatures of qualified voters of the City.

In the Counterclaim, Appellees allege that the City Clerk's failure to certify to the City Council the requisite number of verified signatures to have the charter amendment election go forward was improper, and request the trial court to order the election. The gravamen of their claim is that the City Clerk must be compelled to certify to the City Council that the signatures are valid.

Because the only official upon whom a duty in connection with the charter amendment petition has been placed is the City Clerk, the City Clerk is the only party subject to mandamus. Therefore, the City Clerk is the necessary party-respondent to the attempted counterclaim. Tex. R. Civ. P. 39.

Appellees did not name the City Clerk as a respondent to the Counterclaim for mandamus relief. The City Clerk was not served with process, nor given the opportunity to appear. Therefore, the only necessary party to Appellees' mandamus action was not sued. See, *Brooks v. Northglen Ass'n,* 141 S.W. 3d 158 (Tex. 2004).

Further, Appellees failed to name the Mayor and Members of the City Council as respondents to the Counterclaim for mandamus. As discussed above,

7

the governing body's duties with regard to submission of a charter amendment to the electorate do not arise unless and until the City Clerk has certified that the petition has been verified as signed by a sufficient number of qualified voters. Nonetheless, to obtain the mandamus relief sought (an order of charter amendment special election on November 3, 2015), the Councilmembers are necessary parties-respondent. This argument was presented directly to the trial court at the hearing conducted on August 12, 2015. (RR3: 5-6 & 10-15)

The Court lacks jurisdiction.

## PRAYER

The City prays this Honorable Court reverse and render in favor of the City and against Appellees, and dismiss Appellees' counterclaim for lack of jurisdiction.

Respectfully submitted,

**MCKAMIE KRUEGER, LLP**
941 Proton Rd.
San Antonio, Texas 78258
210.546.2122
210.546.2130 (Fax)

/s/: William M. McKamie
WILLIAM M. McKAMIE
State Bar No. 13686800
mick@mckamiekrueger.com

and

**CITY ATTORNEY**

8

CITY OF SAN MARCOS, TEXAS
512.393.8153
Fax 512.393.3983

/s/: Michael J. Cosentino
Michael J. Cosentino
State Bar No. 04849600
mcosentino@sanmarcostx.gov

**ATTORNEYS FOR DEFENDANT
CITY OF SAN MARCOS, TEXAS**

## CERTIFICATE OF COMPLIANCE

I certify that this document is in compliance with Tex. R. App. P. 9.4 (e) and (i). It contains 1,157 words excluding the exempted parts of the document. The body text is in 14 point font, and the footnote text is in 12 point font.

/s/ William M. McKamie_____
WILLIAM M. McKAMIE

## CERTIFICATE OF SERVICE

I certify that a copy of Appellant's Brief was served in accordance with the Texas Rules of Appellate Procedure as indicated below on September 30, 2015 addressed to:

Craig F. Young
108 E. San Antonio
San Marcos, Texas 78666
512.847.7809
512.393.1212 (Fax)
cyoung@lawyer.com
*Attorney for Morgan Knecht*

Lynn Peach
147 S. Guadalupe, Suite 101
San Marcos, Texas 78666
512.393.9991
888.428.0468 (Fax)
lynn@lynnpeachlaw.com

*Attorney for Sam Brannon*

Brad Rockwell
707 Rio Grande, Ste. 200
Austin, Texas 78701
SBN 17129600
brad@LF-lawfirm.com
512-469-6000
512-482-9346 (fax)
*Attorney for Kathleen O'Connell and*
*Communities for Thriving Water-Fluoride*
*Free San Marcos*

/s/ William M. McKamie____
WILLIAM M. McKAMIE

CASE NO. 03-15-00518-CV

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS
_____

**CITY OF SAN MARCOS, TEXAS**
*Appellant*

v.

**SAM BRANNON, COMMUNITIES FOR TEXAS THRIVING
WATER FLUORIDE-FREE SAN MARCOS, MORGAN KNECHT AND
KATHLEEN O'CONNELL**
*Appellee*
_____

On Appeal from the 274th Judicial District Court of Hays County, Texas
Honorable R. Bruce Boyer, Judge Presiding
Trial Court Cause Number 15-1266

---

## APPELLANT'S APPENDIX

---

A.    Counterclaims of Communities for Thriving Water-Fluoride Free San Marcos, and Kathleen O'Connell *filed July 17, 2015*(CR: 20)

B.    Counterclaims filed on behalf of Sam Brannon, *filed July 17, 2015* (CR: 35)

C.    First Amended Counterclaims of Communities for Thriving Water-Fluoride Free San Marcos, and Kathleen O'Connell, *filed August 4, 2015* (CR: 56)

D.    Counter-Defendant City of San Marcos' Plea to the Jurisdiction on Counterclaims for Mandamus Relief, *filed July 29, 2015* (CR: 49)

E.    Response of Counterclaimants Communities for Thriving Water-Fluoride Free San Marcos, and Kathleen O'Connell to the City of San Marcos' Plea to the Jurisdiction, *filed August 5, 2015* (CR: 72)

F.    Order Denying City's Plea to the Jurisdiction on Counterclaims for Mandamus Relief, *dated August 12, 2015*

G.    Case No. 15-0632; In re Shannon Dorn, Kathleen O'Connell, Communities for Thriving Waters-Fluoride-Free San Marcos, and Morgan Knecht, Supreme Court of Texas Denial of Petition for Writ of Mandamus; Concurring Opinion by Justice Brown and Justice Green, *dated September 4, 2015*

H.    Reporter's Record, Volume 3, Pages 5-6 and 10-15; excerpts from the Plea to Jurisdiction Hearing held August 12, 2015; 274th Judicial District Court, Hays County.

CASE NO. 15-1266

| | | |
|---|---|---|
| CITY OF SAN MARCOS, TEXAS, | § | |
| *Plaintiff and Counter-Defendant*, | § | |
| | § | IN THE DISTRICT COURT |
| v. | § | |
| | § | |
| COMMUNITIES FOR THRIVING | § | |
| WATER-FLUORIDE FREE SAN | § | |
| MARCOS, AND KATHLEEN | § | OF HAYS COUNTY, TEXAS |
| O'CONNELL | § | |
| *Defendants and Counter-claimants*, | § | |
| | § | |
| and | § | |
| | § | 274TH JUDICIAL DISTRICT |
| SAM BRANNON and MORGAN | § | |
| KNECHT, | § | |
| *Defendants*. | § | |

## COUNTERCLAIMS
## OF COMMUNITIES FOR THRIVING WATER-
## FLUORIDE FREE SAN MARCOS, AND KATHLEEN O'CONNELL

## *EXPEDITED CONSIDERATION IS REQUESTED*.

**TO THE HONORABLE JUDGE OF THE COURT:**

COME NOW Communities for Thriving Water Fluoride-Free San Marcos

("Communities"), and Kathleen O'Connell (collectively "Defendants" or

"Counterclaimants"), and file these Counterclaims against Plaintiff and Counter-

Defendant City of San Marcos, and in support therewith, respectfully offer the following:

**Appendix - A**

000020

# I.
## NATURE OF THE CASE AND DISCOVERY CONTROL PLAN

1. Counterclaimants intend that discovery be conducted under Level 3, Texas Rule of Civil Procedure 190.4.

2. Communities and Kathleen O'Connell submitted to Plaintiff and Counter-Defendant City of San Marcos a Petition for an amendment to the Charter of the City of San Marcos to bar the addition of fluoride to the San Marcos public water supply ("Petition") on April 1, 2015. Substantially more than 5% of the voters within the City of San Marcos signed this Petition. The City of San Marcos, however, has refused to submit the proposed charter amendment to the voters as required by section 9.004(a) of the Texas Local Government Code.

3. The San Marcos City Clerk has refused to even count the signatures for the Petition, taking the position that all the signatures are "invalid" because "none of the petition papers contains an oath or affirmation." As a matter of Texas statute and the San Marcos City Charter, there is no requirement that petitions for a City Charter amendment contain an oath or affirmation. Such a requirement in this situation would be a violation of Article I, Section 2 and Article XI Section 5 of the Texas Constitution as well as a violation of the First and Fourteenth Amendments of the United States Constitution.

4. The City of San Marcos has filed a hysterical and punitive lawsuit against the Defendants, and made allegations that are known to the City to be false. San

2

000021

Marcos has asked the Court to award it attorney's fees for the costs San Marcos has incurred filing suit against Defendants.

5. Communities and Kathleen O'Connell as Counterclaimants seek a writ of mandamus and injunction ordering the Counter-Defendant to place the charter amendment on the ballot for the November 3, 2015 election. They also seek related declaratory relief.

6. Under the authority of §37.008 of the Texas Civil Practice and Remedies Code, Counterclaim Plaintiffs hereby sue to recover their costs and reasonable and necessary attorney's fees in both the trial of this case and in connection with any subsequent appeal.

7. Counterclaimants seek monetary relief of $100,000 or less and nonmonetary injunctive, declaratory and mandamus relief.

8. The Texas Election Code requires general elections to be ordered not later than the 78th day before Election Day. Applied here, the deadline for San Marcos to order an election for the proposed Charter amendments is August 17, 2015, one month from today.

9. For this reason, expedited consideration is requested.

## II.
## PARTIES

10. Counterclaimant Communities for Thriving Waters Fluoride-Free San Marcos is an association created to cause Counter-Defendant San Marcos to stop adding fluoride to its public water supply. Communities submitted the Petition

3

000022

to amend the San Marcos charter to prohibit fluoridation. Most of Communities members are residents of San Marcos, registered and qualified voters, and have signed the Petition. Most of the members of Communities wish to vote for the Charter amendment in an election. Most of the members are customers of San Marcos' public water system. San Marcos initiated the instant lawsuit by filing suit against Communities.

11. Counterclaimant Kathleen O'Connell is a member of Communities and has submitted the Petition to San Marcos and she has been sued by San Marcos for doing so. San Marcos initiated the instant lawsuit by filing suit against Kathleen O'Connell.

12. Counter-Defendant City of San Marcos is a home rule Texas City and is represented by the City Attorney in this lawsuit. San Marcos is the initial Plaintiff in this lawsuit, having sued its citizens for submitting a City Charter Amendment petition and asking the Court to judge these citizens liable for the attorney's fees resulting from the City's lawsuit.

## III.
## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to Texas Civil Practice and Remedies Code section 32.003, Texas Government Code section 24.008, and Article V, section 8 of the Texas Constitution.

14. Venue is proper in Hays County, Texas, under Sections 15.002 and 15.004 of the Texas Civil Practice and Remedies Code.

4

000023

## IV.
## FACTS

15.    Counterclaimants are aware of scientific research indicating that fluoridation of the public water supply is detrimental to human health. Hundreds of cities agree and have decided to stop adding fluoride to their public drinking water. Among the Texas cities that have stopped adding fluoride to their waters are: College Station, Alamo Heights, Elgin, and Lago Vista. Other cities who no longer fluoridate their public water supply include Albuquerque, New Mexico; Honolulu, Hawaii; Colorado Springs, Colorado; Spokane, Olympia, and Bellingham, Washington; Davis, Redding, Santa Barbara, and Santa Cruz, California; Portland, Oregon; Fairbanks and Juneau, Alaska; and Quebec City, Windsor, and Calgary, Canada.

16.    The City of College Station estimated a savings to its taxpayers of about $40,000 attributable to the discontinuation of fluoridation.

17.    Counterclaimants began discussions with San Marcos city officials in the year 2013 in an attempt to convince them to discontinue fluoridation of San Marcos water.

18.    On August 13, 2013, the San Marcos Executive Director of Public Services, Tom Taggart, sent a memo to the San Marcos Mayor, City Council, and City Clerk summarizing the requests being made by Counterclaimants. Among other things, the Mayor, City Council, and City Clerk were informed by their staff that Counterclaimant O'Connell's and Communities' goal was to "cease

5

000024

fluoridation of the drinking water supply in San Marcos" and to stop "the addition of fluoride to the Public Drinking water supply." Mr. Taggart also informed the Mayor, City Council and City Clerk that Counterclaimants wished to see the "Fluoride feed equipment."

19. On August 13, 2013, the San Marcos Executive Director of Public Services also informed the Mayor, City Council, and City Clerk that "a policy change could result in the discontinuation of the treatment at any time" and that the effect on the budget would be a savings in the annual cost to San Marcos of fluoridation which amounted to $14,000.

20. Counterclaimants have never asked San Marcos to remove naturally-occurring fluoride in the drinking water.

21. On April 12, 2015, Counterclaimants submitted to San Marcos a Petition with over 2,000 signatures for a Charter Amendment to be placed on the ballot for the consideration of voters. Counterclaimants pre-verified that at least 1,634 of these signatures were of valid San Marcos voters. This number of voters significantly exceeds 5% of the number of San Marcos registered voters.

22. If approved by the voters, the Charter Amendment would preclude San Marcos from adding fluoride to its public water supply. The Petition was titled a "PETITION to BAN FLOURIDATION in CITY OF SAN MARCOS WATER." The Charter language proposed by the Petition read:

> The City of San Marcos … shall not fluoridate the public water supply or accept any fluoridated water for use in the San Marcos water system, including but not limited to the addition of

6

000025

Hydrofluorosilicic Acid, Hexafluorosilicic Acid, Sodium Silicofluoride, or any other fluoride derivative. The City of San Marcos shall not purchase, install, or allow the installation of fluoridation equipment to be used in relation to the San Marcos municipal water supply or its distribution system.

23. Nowhere in the Petition was there any request or requirement that San Marcos remove naturally-occurring fluoride that sometimes is found in its source of water.

24. On April 7, 2015, Counterclaimant O'Connell and Defendant Brannon met with San Marcos City Manager Jared Miller. Mr. Miller asked multiple questions about removing naturally-occurring fluoride. O'Connell and Brannon responded to each of his questions, explaining carefully that neither they nor Communities, nor the Petition ever mentioned or requested that naturally-occurring fluoride be removed from San Marcos water.

25. The San Marcos City Clerk refused to even count the signatures on the Petition submitted to her. On May 6, she announced that "none of the petition papers contains an oath or affirmation [and therefore] none of the signatures may be counted."

26. On May 18, Communities and O'Connell sent a letter to the Mayor and City Council of San Marcos asking them to place the Charter amendment measure on the ballot as required by section 9.004(a) of the Texas Local Government Code.

27. This request was again made on June 16, 2015.

7

000026

28. Counterclaimants made demand on the City of San Marcos to submit the proposed charter amendment to the voters as required by section 9.004(a) of the Texas Local Government Code. But the City of San Marcos has refused.

29. On or about June 18, 2015, the City of San Marcos filed suit against Counterclaimants, Sam Brannon, and Morgan Knecht seeking declaratory relief and a judgment asking Kathleen O'Connell, Sam Brannon, Morgan Knecht, and Communities for Thriving Waters – Fluoride Free San Marcos to pay the City's attorney's fees.

30. The City seeks a declaration validating the position it took with regard to the alleged oath or affidavit requirement for City charter petitions.

31. The City also alleged that the Petitioned charter amendment

> would prohibit the City of San Marcos from accepting …
> naturally fluoridated surface water and groundwater … forcing
> the City to find, finance and develop a new raw water supply or to
> design and install equipment at its surface water treatment plant
> and ground water wells in an attempt to remove all fluoride
> derivatives….

San Marcos further alleged that the cost to the City of doing this would exceed $97 million.

32. As a result of the filing of this lawsuit, these knowingly false allegations have been repeated by the news media as if they were true.

33. The effect of these legally and factually baseless claims has been to cast the Counterclaimants and their work in a false light, harm their reputations, and

8

000027

falsely prejudice the voters of San Marcos against this proposed Charter amendment.

## V.
## MANDAMUS

34. Counterclaimants submitted to Counterdefendant City of San Marcos a Petition for a Charter amendment containing more than 1,634 valid signatures of qualified voters of the City of San Marcos, pursuant to section 277.002(a) of the Texas Election Code and section 9.004(a) of the Texas Local Government Code.

35. The number of these qualified signatures exceeded the requirements of section 9.004(a). Five percent of the number of qualified San Marcos voters is approximately 964.

36. "When the requisite number of qualified signatures sign such a petition, the municipal authority must put the measure to a popular vote." *Blume v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999).

37. The City of San Marcos had a non-discretionary ministerial duty to put the Charter amendment requested by the Petition on the ballot.

38. By refusing to place the Charter amendment on the ballot, San Marcos abused its discretion.

39. Counterclaimants are entitled to immediate mandamus relief. Without the issuance of a mandamus, Counterclaimants may not have a remedy at law.

9

000028

## VI.
## INJUNCTION AGAINST VIOLATIONS
## OF ART. I, § 2 AND ART. IX, § 5 OF THE TEXAS CONSTITUTION

40. The city charter petition process implements Article I, section 2 of the Texas Bill of Rights, which states that "All political power is inherent in the people." *Green v. City of Lubbock*, 627 S.w.2d 868, 871 (Tex. App. – Amarillo 1982, writ ref'd n.r.e.).

41. The system of petitioning for a charter amendment "has its historical roots in the people's dissatisfaction with officialdom's refusal to enact laws." *Green*, 627 S.W.2d at 871. It is "the exercise by the people of a power reserved to them." *Taxpayers' Ass'n of Harris County v. City of Houston*, 105 S.W.2d 655, 657 (Tex. 1937).

42. As a matter of constitutional law, all rights relating to submitting petitions for a vote on a charter amendment should be liberally construed in favor of the power reserved to the people. *Taxpayers' Ass'n*, 105 S.W.2d at 657.

43. The law has long been that city charter requirements for amending a charter by petition are different than the requirements for passing ordinances by initiative and referendum. *See Edwards v. Murphy*, 256 S.W.2d 470 (Tex. Civ. App. – Fort Worth 1953, dism'd).

44. The San Marcos City Charter has only one section, 12.11, expressly defining the process for amending the City Charter. It is titled "Amending the City Charter" and reads in its entirety:

10

000029

> Amendments to this Charter may be framed and submitted to the voters of the City in the manner provided by <u>state</u> law.

(emphasis supplied).

45. This section 12.11 Charter provision is consistent with Art. XI § 5 of the Texas Constitution which says the "amendment of charters is subject to such limitations as may be prescribed by the Legislature."

46. San Marcos has transgressed this constitutional provision by imposing signature validation requirements that are more onerous than what is specifically prescribed by the Legislature – e.g. which are more restrictive than and not consistent with Election Code section 277.002(a).

47. With respect to the Counterclaimants' fluoridation petition, San Marcos has taken the position that the criteria for establishing the validity of Charter amendment petitions is not found in state law, but rather in a section of the San Marcos Charter, section 6.03, which is not even mentioned by the Charter section 12.11 entitled "Amending the City Charter." Section 6.03 references petitions for ordinances rather than Charter amendments.

48. Because the submission of signatures verified under oath is required to place a citizen-initiated ordinance on the ballot, San Marcos takes the position that a similar oath or verification is required for a petition to amend the Charter.

49. By adding this onerous requirement that State statutes do not prescribe, San Marcos violates Art. XI, § 5 of the Texas Constitution. By imposing onerous oath and verification requirements for signatures on petitions to amend the City

11

000030

Charter, San Marcos is diminishing the powers reserved to the people in violation of Article I, section 2 of the Texas Constitution.

50. Counterclaimants ask that San Marcos be enjoined from denying their Constitutional right to seek amendment of the Charter by petition and that San Marcos be ordered to place Counterclaimants' Charter amendment regarding fluoride on the ballot. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1 (Tex. 2011).

## VII.
## DECLARATORY RELIEF

51. Pleading in the alternative, if as San Marcos contends, City Charter section 6.03 and/or Texas Election Code section 277.004 are correctly interpreted to require Counterclaimants to submit charter petitions that are affirmed under oath in order to establish the right to get a proposed charter amendment on the ballot, Counterclaimants seek a declaration pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code that section 6.03 and section 277.004 as applied to Counterclaimants are invalid as inconsistent with the First and Fourteenth Amendments to the United States Constitution.

52. There is no indication of fraud or invalidity of the 1,634 already-verified signatures that were submitted. In this context, to require these signatures to be submitted under oath would serve no rational purpose. A requirement for an oath or affirmation is not narrowly tailored to advance a compelling state interest.

12

000031

53. Counterclaimants in addition seek a declaration that an ordinance putting the anti-fluoride charter amendment on the ballot would be valid.

54. Counterclaimants in addition seek recovery from San Marcos of attorney's fees and costs incurred before this Court and any appellate court pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.

## PRAYER

For the reasons given above, Counterclaimants Communities for Thriving Waters – Fluoride-Free San Marcos and Kathleen O'Connell respectfully ask the Court to grant them the following: a writ of mandamus and injunction ordering Counter-Defendant City of San Marcos to place Counterclaimants' proposed Charter amendment on the November 2015 election ballot. Additionally, but only in the event that the Court agrees with San Marcos' contention that City Charter section 6.03 and Texas Election Code section 277.004 require Charter Petition signatures to be verified under oath, Counterclaimants seek a declaration that Charter section 6.03 and Texas Election Code section 277.004 are invalid as applied to Counterclaimants' petition; attorney's fees under Texas Civil Practice and Remedies Code section 37.008; and any other relief to which they may be entitled.

Respectfully submitted,

/s/ Brad Rockwell
Brad Rockwell
SBT No. 17129600

FREDERICK, PERALES,

13

000032

ALLMON & ROCKWELL, P.C.
707 Rio Grande St., Ste. 200
Austin, Texas 78701
(512) 469-6000
(512) 482-9346 facsimile
brad@LF-lawfirm.com

ATTORNEYS FOR KATHLEEN
O'CONNELL AND
COMMUNITIES FOR
THRIVING WATER –
FLOURIDE FREE SAN
MARCOS

14

## CERTIFICATE OF SERVICE

By my signature, below, I certify that on July 17, 2015, a true and correct copy of the foregoing document was served upon the City of San Marcos *via* e-mail, as indicated, and by deposit in the U.S. mail, in accordance with the Texas Rules of Civil Procedure, on the other parties.

/s/ Brad Rockwell
Brad Rockwell

**FOR THE CITY OF SAN MARCOS:**
Michael J. Cosentino
San Marcos City Attorney
630 East Hopkins
San Marcos, Texas 78666
(512) 393- 8151
(855) 759- 2846 fascimile
mcosentino@sanmarcostx.gov

**FOR SAM BRANNON:**
Lynn Peach
174 S. Guadalupe Street, No. 101
(512) 393-9991
(888) 428-0468 facsimile
lynn@lynnpeachlaw.com

**FOR MORGAN KNECHT:**
Morgan Knecht
235 Craddock Avenue
Unit B
San Marcos, Texas 78666

000034

CASE NO. 15-1266

| | | |
|---|---|---|
| CITY OF SAN MARCOS, TEXAS, | § | |
| *Plaintiff and Counter-Defendant,* | § | |
| | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | |
| | § | |
| | § | |
| SAM BRANNON, | § | |
| COMMUNITIES FOR THRIVING | § | |
| WATER-FLUORIDE FREE SAN | § | OF HAYS COUNTY, TEXAS |
| MARCOS, AND KATHLEEN | § | |
| O'CONNELL | § | |
| *Defendants and Counter-claimants,* | § | |
| | § | |
| And | § | 274TH JUDICIAL DISTRICT |
| | § | |
| MORGAN KNECHT, | § | |
| *Defendant.* | § | |

## COUNTERCLAIMS

## EXPEDITED CONSIDERATION IS REQUESTED.

**TO THE HONORABLE JUDGE OF THE COURT:**

COME NOW Sam Brannon, Defendant in this suit, and files these Counterclaims against Plaintiff and Counter-Defendant City of San Marcos, and in support therewith, respectfully offer the following:

**Appendix - B**

000035

# I.
## NATURE OF THE CASE AND DISCOVERY CONTROL PLAN

1. Counterclaimant intends that discovery be conducted under Level 3, Texas Rule of Civil Procedure 190.4.

2. Sam Brannon has submitted to Plaintiff and Counter-Defendant City of San Marcos a Petition for an amendment to the Charter of the City of San Marcos to bar the addition of fluoride to the San Marcos public water supply ("Petition"). Substantially more than 5% of the voters within the City of San Marcos signed this Petition. The City of San Marcos, however, has refused to submit the proposed charter amendment to the voters as required by section 9.004(a) of the Texas Local Government Code.

3. The San Marcos City Clerk has refused to even count the signatures for the Petition, taking the position that all the signatures are "invalid" because "none of the petition papers contains an oath or affirmation." As a matter of Texas statute and the San Marcos City Charter, there is no requirement that petitions for a City Charter amendment contain an oath or affirmation. Such a requirement in this situation would be a violation of Article I, Section 2 and Article XI Section 5 of the Texas Constitution as well as a violation of the First and Fourteenth Amendments of the United States Constitution.

4. The City of San Marcos has filed a hysterical and punitive lawsuit against the Defendant, and made allegations that are known to the City to be false. San

2

000036

Marcos has asked the Court to award it attorney's fees for the costs San Marcos has incurred filing suit against Defendant.

5.    Sam Brannon as Counterclaimant seeks a writ of mandamus and injunction ordering the Counter-Defendant to place the charter amendment on the ballot for the November 3, 2015 election.   They also seek related declaratory relief.

6.    Under the authority of §37.008 of the Texas Civil Practice and Remedies Code, Counterclaim Plaintiff hereby sues to recover its costs and reasonable and necessary attorney's fees in both the trial of this case and in connection with any subsequent appeal.

7.    Counterclaimant seeks monetary relief of $100,000 or less and nonmonetary injunctive, declaratory and mandamus relief.

8.    The law requires that disputes over ballots be decided 45 days in advance of the election.  Applied here, the deadline for resolution of this matter is September 19, 2015, in approximately 12 weeks.

9.    For this reason, expedited consideration is requested.

## II.
## PARTIES

10.    Counterclaimant Sam Brannon is registered to vote in San Marcos. He resides in San Marcos and uses domestic water provided by San Marcos. He has signed the Petition and has submitted it to San Marcos.  He wishes to vote for the Charter Amendment.  San Marcos initiated the instant lawsuit by filing suit against Sam Brannon.

3

000037

11. Counter-Defendant City of San Marcos is a home rule Texas City and is represented by the City Attorney in this lawsuit. San Marcos is the initial Plaintiff in this lawsuit, having sued its citizens for submitting a City Charter Amendment petition and asking the Court to order these citizens liable for the attorney's fees resulting from the City's lawsuit.

## III.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to Texas Civil Practice and Remedies Code section 32.003, Texas Government Code section 24.008, and Article V, section 8 of the Texas Constitution.

13. Venue is proper in Hays County, Texas, under Sections 15.002, 15.0151, and 15.004 of the Texas Civil Practice and Remedies Code.

## IV.

## FACTS

14. Counterclaimant is aware of scientific research indicating that fluoridation of the public water supply, is detrimental to health. Hundreds of cities agree and have decided to stop adding fluoride to their public drinking water. Among the Texas cities who have stopped adding fluoride to their waters are: College Station, Alamo Heights, Elgin, and Lago Vista. Other cities who no longer fluoridate their public water supply include Albuquerque, New Mexico;

4

000038

Honolulu, Hawaii; Colorado Springs, Colorado; Spokane, Olympia, and Bellingham, Washington; Davis, Redding, Santa Barbara, and Santa Cruz, California; Portland, Oregon; Fairbanks and Juneau, Alaska; and Quebec City, Windsor, and Calgary, Canada.

15. The City of College Station estimated a savings to its taxpayers of about $40,000 attributable to the discontinuation of fluoridation.

16. Counterclaimant along with other named Defendants began discussions with San Marcos city officials in the year 2013 in an attempt to convince them to discontinue fluoridation of San Marcos water.

17. On August 13, 2013, the San Marcos Executive Director of Public Services, Tom Taggart, sent a memo to the San Marcos Mayor, City Council and City Clerk summarizing the requests being made by Counterclaimant and other named Defendants. Among other things, the Mayor, City Council and City Clerk were informed by their staff that Counterclaimant Brannon's and other named Defendants goal was to "cease fluoridation of the drinking water supply in San Marcos" and to stop "the addition of fluoride to the Public Drinking water supply." Mr. Taggart also informed the Mayor, City Council and City Clerk that Counterclaimant and other named Defendants wished to see the "Fluoride feed equipment."

18. On August 13, 2013, the San Marcos Executive Director of Public Services also informed the Mayor, City Council and City Clerk that "a policy change could result in the discontinuation of the treatment at any time" and that the

5

000039

effect on the budget would be a savings in the annual cost to San Marcos of fluoridation which amounted to $14,000.

19. Counterclaimant has never asked San Marcos to remove naturally-occurring fluoride in the drinking water.

20. On April 12, 2015, Counterclaimant along with other named Defendants submitted to San Marcos a Petition with over 2000 signatures for a Charter Amendment to be placed on the ballot for the consideration of voters. Counterclaimant along with other named Defendants pre-verified that at least 1,634 of these signatures were the of valid San Marcos voters. This number of voters significantly exceeds 5% of the number of San Marcos registered voters.

21. If approved by the voters, the Charter Amendment would preclude San Marcos from adding fluoride to its public water supply. The Petition was titled a "PETITION to BAN FLOURIDATION in CITY OF SAN MARCOS WATER." The Charter language proposed by the Petition read:

> The City of San Marcos … shall not fluoridate the public water supply or accept any fluoridated water for use in the San Marcos water system, including but not limited to the addition of Hydrofluorosilicic Acid, Hexafluorosilicic Acid, Sodium Silicofluoride, or any other fluoride derivative. The City of San Marcos shall not purchase, install, or allow the installation of fluoridation equipment to be used in relation to the San Marcos municipal water supply or its distribution system.

22. Nowhere in the Petition was there any request or requirement that San Marcos remove naturally-occurring fluoride that sometimes is found in its source of water.

6

000040

23. On April 7, 2015, Counterclaimant Brannon along with Defendant Kathleen O'Connell met with San Marcos City Manager Jared Miller. Mr. Miller asked multiple questions about removing naturally-occurring fluoride. O'Connell and Brannon responded to each of his questions, explaining carefully that neither they nor Communities, nor the Petition ever mentioned or requested that naturally-occurring fluoride be removed from San Marcos water.

24. The San Marcos City Clerk refused to even count the signatures on the Petition submitted to her. On May 6, she announced that "none of the petition papers contains an oath or affirmation [and therefore] none of the signatures may be counted."

25. On May 18, Communities and Defendant O'Connell sent a letter to the Mayor and City Council of San Marcos asking them to place the Charter amendment measure on the ballot as required by section 9.004(a) of the Texas Local Government Code.

26. This request was again made on June 16, 2015.

27. Counterclaimant made demand on the City of San Marcos to submit the proposed charter amendment to the voters as required by section 9.004(a) of the Texas Local Government Code. But the City of San Marcos has refused.

28. On or about June 18, 2015, the City of San Marcos filed suit against Counterclaimant seeking declaratory relief and a judgment asking Sam Brannon and other Defendants to pay the City's attorney's fees.

7

000041

29. The City seeks a declaration validating the position it took with regard to the alleged oath or affidavit requirement for City charter petitions.

30. The City also alleged that the Petitioned charter amendment

> would prohibit the City of San Marcos from accepting …
> naturally fluoridated surface water and groundwater … forcing
> the City to find, finance and develop a new raw water supply or to
> design and install equipment at its surface water treatment plant
> and ground water wells in an attempt to remove all fluoride
> derivatives….

San Marcos further alleged that the cost to the City of doing this would exceed $97 million.

31. As a result of the filing of this lawsuit, these knowingly false allegations have been repeated by the news media as if they were true.

32. San Marcos' allegations regarding the substance, meaning and consequences of the proposed Charter amendment moreover are not even ripe for adjudication and cannot properly be considered by this Court. *In re Roof*, 130 S.W.3d 414, 417-418 (Tex. App. – Houston [14th Dist.] 2004, orig. proc.); *Coalson v. City of Victoria*, 610 S.W.2d 744, 745 (Tex. 1980).

33. The effect of these legally and factually baseless claims has been to cast the Counterclaimant and the work in a false light, harm his reputation, and falsely prejudice the voters of San Marcos against this proposed Charter amendment.

8

000042

## V.

## MANDAMUS

34. Counterclaimant along with other named Defendants submitted to Counterdefendant City of San Marcos a Petition for a Charter amendment containing more than 1,634 valid signatures of qualified voters of the City of San Marcos.

35. Each of these 1,634 signatures was valid pursuant to section 277.002(a) of the Texas Election Code and section 9.004(a) of the Texas Local Government Code.

36. The number of these qualified signatures exceeded the requirements of section 9.004(a). Five percent of the number of qualified San Marcos voters is approximately 964.

37. "When the requisite number of qualified signatures sign such a petition, the municipal authority must put the measure to a popular vote." *Blume v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999).

38. The City of San Marcos had a non-discretionary ministerial duty to put the Charter amendment requested by the Petition on the ballot.

39. By refusing to place the Charter amendment on the ballot, San Marcos abused its discretion.

9

000043

40.     Counterclaimant is entitled to immediate mandamus relief. Without the issuance of a mandamus, Counterclaimant may not have a remedy at law.

## VI.

## INJUNCTION AGAINST VIOLATIONS
## OF ART. I, § 2 AND ART. IX, § 5 OF THE TEXAS CONSTITUTION

41.     The city charter petition process implements Article I, section 2 of the Texas Bill of Rights, which states that "All political power is inherent in the people." *Green v. City of Lubbock*, 627 S.w.2d 868, 871 (Tex. App. – Amarillo 1982, writ ref'd n.r.e.).

42.     The system of petitioning for a charter amendment "has its historical roots in the people's dissatisfaction with officialdom's refusal to enact laws." *Green*, 627 S.W.2d at 871. It is "the exercise by the people of a power reserved to them." *Taxpayers' Ass'n of Harris County v. City of Houston*, 105 S.W.2d 655, 657 (Tex. 1937).

43.     As a matter of constitutional law, all rights relating to submitting petitions for a vote on a charter amendment should be liberally construed in favor of the power reserved to the people. *Taxpayers' Ass'n*, 105 S.W.2d at 657.

44.     The law has long been that city charter requirements for amending a charter by petition are different than the requirements for passing ordinances by initiative

000044

and referendum. *See Edwards v. Murphy*, 256 S.W.2d 470 (Tex. Civ. App. – Fort Worth 1953, dism'd).

45.    The San Marcos City Charter has only one section, 12.11, expressly defining the process for amending the City Charter. It is titled "Amending the City Charter" and reads in its entirety:

> Amendments to this Charter may be framed and submitted to the voters of the City in the manner provided by state law.

(emphasis supplied).

46.    This section 12.11 Charter provision is consistent with Art. XI § 5 of the Texas Constitution which says the "amendment of charters is subject to such limitations as may be prescribed by the Legislature."

47.    San Marcos has transgressed this constitutional provision by imposing signature validation requirements that are more onerous than what is specifically prescribed by the Legislature – e.g. which are more restrictive than and not consistent with Election Code section 277.002(a).

48.    With respect to the Counterclaimant's fluoridation petition, San Marcos has taken the position that the criteria for establishing the validity of Charter amendment petitions is not found in state law, but rather in a section of the San Marcos Charter, section 6.03, which is not even mentioned by the Charter section 12.11 entitled "Amending the City Charter." Section 6.03 references petitions for ordinances rather than Charter amendments,

11

000045

49.  Because the submission of signatures verified under oath is required to place a citizen-initiated ordinance on the ballot, San Marcos takes the position that a similar oath or verification is required for a petition to amend the Charter.

50.  By adding this onerous requirement that State statutes do not prescribe, San Marcos violates Art. XI, § 5 of the Texas Constitution. By imposing onerous oath and verification requirements for signatures on petitions to amend the City Charter, San Marcos is diminishing the powers reserved to the people in violation of Article I, section 2 of the Texas Constitution.

51.  Counterclaimant asks that San Marcos be enjoined from denying their Constitutional right to seek amendment of the Charter by petition and that San Marcos be ordered to place Counterclaimants' Charter amendment regarding fluoride on the ballot. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1 (Tex. 2011).

## VII.

### DECLARATORY RELIEF

52.  Pleading in the alternative, if as San Marcos contends, City Charter section 6.03 and/or Texas Election Code section 277.004 are correctly interpreted to require Counterclaimant to submit charter petitions that are affirmed under oath in order to establish the right to get a proposed charter amendment on the ballot, Counterclaimants seek a declaration pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code that section 6.03 and section 277.004 as

12

000046

applied to Counterclaimant is invalid as inconsistent with the First and Fourteenth Amendments to the United States Constitution.

53. There is no indication of fraud or invalidity of the 1,634 already-verified signatures that were submitted. In this context, to require these signatures to be submitted under oath would serve no rational purpose. A requirement for an oath or affirmation is not narrowly tailored to advance a compelling state interest.

54. Counterclaimant in addition seeks a declaration that their requested ordinance putting the anti-fluoride charter amendment on the ballot would be valid.

55. Counterclaimant in addition seeks recovery from San Marcos of attorney's fees and costs incurred before this Court and any appellate court pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.

## PRAYER

For the reasons given above, Counterclaimant Sam Brannon respectfully asks the Court to grant him the following: a writ of mandamus and injunction ordering Counter-Defendant City of San Marcos to place Counterclaimants' proposed Charter amendment on the November 2015 election ballot. Additionally, but only in the event that the Court agrees with San Marcos' contention that City Charter section 6.03 and Texas Election Code section 277.004 require Charter Petition signatures to be verified under oath, Counterclaimant seeks a declaration that Charter section 6.03 and Texas Election Code section 277.004 are invalid as applied to Counterclaimant's petition; attorney's fees under

13

000047

Texas Civil Practice and Remedies Code section 37.008; and any other relief to which they may be entitled.

Respectfully submitted,

Lynn Peach
SBT No. 00792746

174 S. Guadalupe Street, Ste 101
San Marcos, Texas 78666

(512)393-9991
(888)428-0468 facsimile
lynn@lynnpeachlaw.com

000048

FILED
8/4/2015 5:21:59 PM
Beverly Crumley
District Clerk
Hays County, Texas

CASE NO. 15-1266

| | | |
|---|---|---|
| CITY OF SAN MARCOS, TEXAS, | § | |
| *Plaintiff and Counter-Defendant*, | § | |
| | § | IN THE DISTRICT COURT |
| v. | § | |
| | § | |
| COMMUNITIES FOR THRIVING | § | |
| WATER-FLUORIDE FREE SAN | § | |
| MARCOS, AND KATHLEEN | § | |
| O'CONNELL | § | OF HAYS COUNTY, TEXAS |
| *Defendants and Counter-claimants*, | § | |
| | § | |
| and | § | |
| | § | 274TH JUDICIAL DISTRICT |
| SAM BRANNON and MORGAN | § | |
| KNECHT, | § | |
| *Defendants*. | § | |

## FIRST AMENDED COUNTERCLAIMS
## OF COMMUNITIES FOR THRIVING WATER-
## FLUORIDE FREE SAN MARCOS, AND KATHLEEN O'CONNELL

## *EXPEDITED CONSIDERATION IS REQUESTED.*

**TO THE HONORABLE JUDGE OF THE COURT:**

COME NOW Communities for Thriving Water Fluoride-Free San Marcos

("Communities"), and Kathleen O'Connell (collectively "Defendants" or

"Counterclaimants"), and file these First Amended Counterclaims against Plaintiff and

Counter-Defendant City of San Marcos, and in support therewith, respectfully offer the

following:

**Appendix - C**

000056

# I.
## NATURE OF THE CASE AND DISCOVERY CONTROL PLAN

1. Counterclaimants intend that discovery be conducted under Level 3, Texas Rule of Civil Procedure 190.4.

2. Communities and Kathleen O'Connell submitted to Plaintiff and Counter-Defendant City of San Marcos a Petition for an amendment to the Charter of the City of San Marcos to bar the addition of fluoride to the San Marcos public water supply ("Petition") on April 1, 2015. Substantially more than 5% of the voters within the City of San Marcos signed this Petition. The City of San Marcos, however, has refused to submit the proposed charter amendment to the voters as required by section 9.004(a) of the Texas Local Government Code.

3. The San Marcos City Clerk has refused to even count the signatures for the Petition, taking the position that all the signatures are "invalid" because "none of the petition papers contains an oath or affirmation." As a matter of Texas statute and the San Marcos City Charter, there is no requirement that petitions for a City Charter amendment contain an oath or affirmation. Such a requirement in this situation would be a violation of Article I, Section 2 and Article XI Section 5 of the Texas Constitution as well as a violation of the First and Fourteenth Amendments of the United States Constitution.

4. The City of San Marcos has filed a hysterical and punitive lawsuit against the Defendants, and made allegations that are known to the City to be false. San

2

Marcos has asked the Court to award it attorney's fees for the costs San Marcos has incurred filing suit against Defendants.

5.  Communities and Kathleen O'Connell as Counterclaimants seek a writ of mandamus and injunction ordering the Counter-Defendant to place the charter amendment on the ballot for the November 3, 2015 election.   They also seek related declaratory relief.

6.  Under the authority of §37.008 of the Texas Civil Practice and Remedies Code, Counterclaim Plaintiffs hereby sue to recover their costs and reasonable and necessary attorney's fees in both the trial of this case and in connection with any subsequent appeal.

7.  Counterclaimants seek monetary relief of $100,000 or less and nonmonetary injunctive, declaratory and mandamus relief.

8.  The Texas Election Code requires general elections to be ordered not later than the 71st day before Election Day.  Applied here, the deadline for San Marcos to order an election for the proposed Charter amendments is August 24, 2015.

9.  For this reason, expedited consideration is requested.

## II.
## PARTIES

10.  Counterclaimant Communities for Thriving Waters Fluoride-Free San Marcos is an association created to cause Counter-Defendant San Marcos to stop adding fluoride to its public water supply.  Communities submitted the Petition to amend the San Marcos charter to prohibit fluoridation.  Most of

3

000058

Communities members are residents of San Marcos, registered and qualified voters, and have signed the Petition. Most of the members of Communities wish to vote for the Charter amendment in an election. Most of the members are customers of San Marcos' public water system. San Marcos initiated the instant lawsuit by filing suit against Communities.

11. Counterclaimant Kathleen O'Connell is a member of Communities and has submitted the Petition to San Marcos and she has been sued by San Marcos for doing so. San Marcos initiated the instant lawsuit by filing suit against Kathleen O'Connell.

12. Counter-Defendant City of San Marcos is a home rule Texas City and is represented by the City Attorney in this lawsuit. San Marcos is the initial Plaintiff in this lawsuit, having sued its citizens for submitting a City Charter Amendment petition and asking the Court to judge these citizens liable for the attorney's fees resulting from the City's lawsuit.

**III.**
**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction pursuant to Texas Civil Practice and Remedies Code section 32.003, Texas Government Code section 24.008, and Article V, section 8 of the Texas Constitution.

14. Venue is proper in Hays County, Texas, under Sections 15.002 and 15.004 of the Texas Civil Practice and Remedies Code.

**IV.**

4

000059

**FACTS**

15. Counterclaimants are aware of scientific research indicating that fluoridation of the public water supply is detrimental to human health. Hundreds of cities agree and have decided to stop adding fluoride to their public drinking water. Among the Texas cities that have stopped adding fluoride to their waters are: College Station, Alamo Heights, Elgin, and Lago Vista. Other cities who no longer fluoridate their public water supply include Albuquerque, New Mexico; Honolulu, Hawaii; Colorado Springs, Colorado; Spokane, Olympia, and Bellingham, Washington; Davis, Redding, Santa Barbara, and Santa Cruz, California; Portland, Oregon; Fairbanks and Juneau, Alaska; and Quebec City, Windsor, and Calgary, Canada.

16. The City of College Station estimated a savings to its taxpayers of about $40,000 attributable to the discontinuation of fluoridation.

17. Counterclaimants began discussions with San Marcos city officials in the year 2013 in an attempt to convince them to discontinue fluoridation of San Marcos water.

18. On August 13, 2013, the San Marcos Executive Director of Public Services, Tom Taggart, sent a memo to the San Marcos Mayor, City Council, and City Clerk summarizing the requests being made by Counterclaimants. Among other things, the Mayor, City Council, and City Clerk were informed by their staff that Counterclaimant O'Connell's and Communities' goal was to "cease fluoridation of the drinking water supply in San Marcos" and to stop "the

5

000060

addition of fluoride to the Public Drinking water supply." Mr. Taggart also informed the Mayor, City Council and City Clerk that Counterclaimants wished to see the "Fluoride feed equipment."

19.     On August 13, 2013, the San Marcos Executive Director of Public Services also informed the Mayor, City Council, and City Clerk that "a policy change could result in the discontinuation of the treatment at any time" and that the effect on the budget would be a savings in the annual cost to San Marcos of fluoridation which amounted to $14,000.

20.     Counterclaimants have never asked San Marcos to remove naturally-occurring fluoride in the drinking water.

21.     On April 2, 2015, Counterclaimants submitted to San Marcos a Petition with over 2,000 signatures for a Charter Amendment to be placed on the ballot for the consideration of voters. Counterclaimants pre-verified that at least 1,634 of these signatures were of valid San Marcos voters. This number of voters significantly exceeds 5% of the number of San Marcos registered voters.

22.     If approved by the voters, the Charter Amendment would preclude San Marcos from adding fluoride to its public water supply. The Petition was titled a "PETITION to BAN FLUORIDATION in CITY OF SAN MARCOS WATER." The Charter language proposed by the Petition read:

> The City of San Marcos … shall not fluoridate the public water supply or accept any fluoridated water for use in the San Marcos water system, including but not limited to the addition of Hydrofluorosilicic Acid, Hexafluorosilicic Acid, Sodium Silicofluoride, or any other fluoride derivative. The City of San

6

000061

Marcos shall not purchase, install, or allow the installation of fluoridation equipment to be used in relation to the San Marcos municipal water supply or its distribution system.

23. Nowhere in the Petition was there any request or requirement that San Marcos remove naturally-occurring fluoride that sometimes is found in its source of water.

24. On April 7, 2015, Counterclaimant O'Connell and Defendant Brannon met with San Marcos City Manager Jared Miller. Mr. Miller asked multiple questions about removing naturally-occurring fluoride. O'Connell and Brannon responded to each of his questions, explaining carefully that neither they nor Communities, nor the Petition ever mentioned or requested that naturally-occurring fluoride be removed from San Marcos water.

25. The San Marcos City Clerk refused to even count the signatures on the Petition submitted to her. On May 6, she announced that "none of the petition papers contains an oath or affirmation [and therefore] none of the signatures may be counted."

26. On May 18, Communities and O'Connell sent a letter to the Mayor and City Council of San Marcos asking them to place the Charter amendment measure on the ballot as required by section 9.004(a) of the Texas Local Government Code.

27. This request was again made on June 16, 2015.

7

000062

28. Counterclaimants made demand on the City of San Marcos to submit the proposed charter amendment to the voters as required by section 9.004(a) of the Texas Local Government Code. But the City of San Marcos has refused.

29. On or about June 18, 2015, the City of San Marcos filed suit against Counterclaimants, Sam Brannon, and Morgan Knecht seeking declaratory relief and a judgment asking Kathleen O'Connell, Sam Brannon, Morgan Knecht, and Communities for Thriving Waters – Fluoride Free San Marcos to pay the City's attorney's fees.

30. The City seeks a declaration validating the position it took with regard to the alleged oath or affidavit requirement for City charter petitions.

31. The City also alleged that the Petitioned charter amendment

> would prohibit the City of San Marcos from accepting … naturally fluoridated surface water and groundwater … forcing the City to find, finance and develop a new raw water supply or to design and install equipment at its surface water treatment plant and ground water wells in an attempt to remove all fluoride derivatives….

San Marcos further alleged that the cost to the City of doing this would exceed $97 million.

32. As a result of the filing of this lawsuit, these knowingly false allegations have been repeated by the news media as if they were true.

33. The effect of these legally and factually baseless claims has been to cast the Counterclaimants and their work in a false light, harm their reputations, and

8

000063

falsely prejudice the voters of San Marcos against this proposed Charter amendment.

## V.
## MANDAMUS

34. Counterclaimants submitted to Counterdefendant City of San Marcos a Petition for a Charter amendment containing more than 1,634 valid signatures of qualified voters of the City of San Marcos, pursuant to section 277.002(a) of the Texas Election Code and section 9.004(a) of the Texas Local Government Code.

35. The number of these qualified signatures exceeded the requirements of section 9.004(a). Five percent of the number of qualified San Marcos voters is approximately 964.

36. "When the requisite number of qualified signatures sign such a petition, the municipal authority must put the measure to a popular vote." *Blume v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999).

37. The City of San Marcos had a non-discretionary ministerial duty to put the Charter amendment requested by the Petition on the ballot.

38. By refusing to place the Charter amendment on the ballot, San Marcos abused its discretion.

39. Counterclaimants are entitled to immediate mandamus relief. Without the issuance of a mandamus, Counterclaimants may not have a remedy at law.

000064

## VI.
## INJUNCTION AGAINST VIOLATIONS
## OF ART. I, § 2 AND ART. IX, § 5 OF THE TEXAS CONSTITUTION

40.     The city charter petition process implements Article I, section 2 of the Texas Bill of Rights, which states that "All political power is inherent in the people." *Green v. City of Lubbock*, 627 S.w.2d 868, 871 (Tex. App. – Amarillo 1982, writ ref'd n.r.e.).

41.     The system of petitioning for a charter amendment "has its historical roots in the people's dissatisfaction with officialdom's refusal to enact laws." *Green*, 627 S.W.2d at 871. It is "the exercise by the people of a power reserved to them." *Taxpayers' Ass'n of Harris County v. City of Houston*, 105 S.W.2d 655, 657 (Tex. 1937).

42.     As a matter of constitutional law, all rights relating to submitting petitions for a vote on a charter amendment should be liberally construed in favor of the power reserved to the people. *Taxpayers' Ass'n*, 105 S.W.2d at 657.

43.     The law has long been that city charter requirements for amending a charter by petition are different than the requirements for passing ordinances by initiative and referendum. *See Edwards v. Murphy*, 256 S.W.2d 470 (Tex. Civ. App. – Fort Worth 1953, dism'd).

44.     The San Marcos City Charter has only one section, 12.11, expressly defining the process for amending the City Charter. It is titled "Amending the City Charter" and reads in its entirety:

10

000065

> Amendments to this Charter may be framed and submitted to the voters of the City in the manner provided by <u>state</u> law.

(emphasis supplied).

45. This section 12.11 Charter provision is consistent with Art. XI § 5 of the Texas Constitution which says the "amendment of charters is subject to such limitations as may be prescribed by the Legislature."

46. San Marcos has transgressed this constitutional provision by imposing signature validation requirements that are more onerous than what is specifically prescribed by the Legislature – e.g. which are more restrictive than and not consistent with Election Code section 277.002(a).

47. With respect to the Counterclaimants' fluoridation petition, San Marcos has taken the position that the criteria for establishing the validity of Charter amendment petitions is not found in state law, but rather in a section of the San Marcos Charter, section 6.03, which is not even mentioned by the Charter section 12.11 entitled "Amending the City Charter." Section 6.03 references petitions for ordinances rather than Charter amendments.

48. Because the submission of signatures verified under oath is required to place a citizen-initiated ordinance on the ballot, San Marcos takes the position that a similar oath or verification is required for a petition to amend the Charter.

49. By adding this onerous requirement that State statutes do not prescribe, San Marcos violates Art. XI, § 5 of the Texas Constitution. By imposing onerous oath and verification requirements for signatures on petitions to amend the City

11

000066

Charter, San Marcos is diminishing the powers reserved to the people in violation of Article I, section 2 of the Texas Constitution.

50. San Marcos has violated Counterclaimants' constitutional rights by failing and refusing to count the signatures on the submitted P for tition, and by failing and refusing to place Counterclaimants' petitioned Charter Amendment on the November 3, 2015 election ballot.

51. The City's failure to count the signatures on the Petition and its failure to place the Charter Amendment on the ballot before August 24, 2014 tends to render any other judgment for declaratory relief ineffectual.

52. Counterclaimants are entitled to injunction under principles of equity and the law of Texas relating to injunctions.

53. Without injunctive relief, Counterclaimants will suffer irreparable injury by: losing their right to vote on a Charter Amendment on November 3, 2015; losing their rights to associate with others for the purpose of securing passage of the proposed charter amendment on November 3, 2015; and all value of their petition which was created, circulated and secured at great dedication of irreplaceable time and significant cost.

54. Counterclaimants' losses cannot be recovered in damages against San Marcos because: a) San Marcos retains sovereign immunity from suits for damages; and b) these losses cannot be fully measured by any certain pecuniary standard.

55. Counterclaimants ask that San Marcos be enjoined from denying their Constitutional right to seek amendment of the Charter by petition and that San

12

000067

Marcos be ordered to place Counterclaimants' Charter amendment regarding fluoride on the ballot. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1 (Tex. 2011).

## VII.
## DECLARATORY RELIEF

56. Pleading in the alternative, if as San Marcos contends, City Charter section 6.03 and/or Texas Election Code section 277.004 are correctly interpreted to require Counterclaimants to submit charter petitions that are affirmed under oath in order to establish the right to get a proposed charter amendment on the ballot, Counterclaimants seek a declaration pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code that section 6.03 and section 277.004 as applied to Counterclaimants are invalid as inconsistent with the First and Fourteenth Amendments to the United States Constitution.

57. There is no indication of fraud or invalidity of the 1,634 already-verified signatures that were submitted. In this context, to require these signatures to be submitted under oath would serve no rational purpose. A requirement for an oath or affirmation is not narrowly tailored to advance a compelling state interest.

58. Counterclaimants in addition seek a declaration that an ordinance putting the anti-fluoride charter amendment on the ballot would be valid.

13

000068

59.         Counterclaimants in addition seek recovery from San Marcos of attorney's fees and costs incurred before this Court and any appellate court pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.

### PRAYER

For the reasons given above, Counterclaimants Communities for Thriving Waters – Fluoride-Free San Marcos and Kathleen O'Connell respectfully ask the Court to grant them the following: a writ of mandamus and injunction ordering Counter-Defendant City of San Marcos to place Counterclaimants' proposed Charter amendment on the November 3, 2015 election ballot. Additionally, but only in the event that the Court agrees with San Marcos' contention that City Charter section 6.03 and Texas Election Code section 277.004 require Charter Petition signatures to be verified under oath, Counterclaimants seek a declaration that Charter section 6.03 and Texas Election Code section 277.004 are invalid as applied to Counterclaimants' petition; attorney's fees under Texas Civil Practice and Remedies Code section 37.008; and any other relief to which they may be entitled.

Respectfully submitted,

/s/ Brad Rockwell
Brad Rockwell
SBT No. 17129600

FREDERICK, PERALES,
ALLMON & ROCKWELL, P.C.
707 Rio Grande St., Ste. 200
Austin, Texas 78701
(512) 469-6000

14

(512) 482-9346 facsimile
brad@LF-lawfirm.com

ATTORNEYS FOR KATHLEEN
O'CONNELL AND
COMMUNITIES FOR
THRIVING WATER –
FLUORIDE FREE SAN
MARCOS

15

000070

# CERTIFICATE OF SERVICE

By my signature, below, I certify that on August 4, 2015, a true and correct copy of the foregoing document was served upon counsel to all parties City of San Marcos *via* e-service e-mail in accordance with the Texas Rules of Civil Procedure

/s/ Brad Rockwell
Brad Rockwell

**FOR THE CITY OF SAN MARCOS:**
Michael J. Cosentino
San Marcos City Attorney
630 East Hopkins
San Marcos, Texas 78666
(512) 393- 8151
(855) 759- 2846 facsimile
mcosentino@sanmarcostx.gov

**FOR SAM BRANNON:**
Lynn Peach
174 S. Guadalupe Street, No. 101
(512) 393-9991
(888) 428-0468 facsimile
lynn@lynnpeachlaw.com

**FOR MORGAN KNECHT:**
Craig Young
108 E. San Antonio St.
San Marcos, Texas 78666
(512) 847-7809
(512) 353-1219 facsimile
cyoung@lawyer.com

16

000071

CAUSE NO. 15-1266

| | | |
|---|---|---|
| CITY OF SAN MARCOS, TEXAS | § § § | IN THE DISTRICT COURT |
| *Plaintiff and Counter-Defendant* | § § § | |
| v. | § § | |
| SAM BRANNON, COMMUNITIES FOR THRIVING WATER-FLUORIDE FREE SAN MARCOS, AND KATHLEEN O'CONNELL | § § § § | OF HAYS COUNTY, TEXAS |
| *Defendants and Counter-claimants* | § § § | |
| And | § § | |
| MORGAN KNECHT | § § | |
| *Defendant* | § § | 274TH JUDICIAL DISTRICT |
| | § | |

**COUNTER-DEFENDANT CITY OF SAN MARCOS' PLEA TO THE JURISIDICTION ON COUNTERCLAIMS FOR MANDAMUS RELIEF**

TO THE HONORABLE JUDGE OF THIS COURT:

The City of San Marcos, Plaintiff and Counter-Defendant, presents this Plea To The Jurisdiction in response to the requests for mandamus relief presented in the Counterclaims of Sam Brannon, Kathleen O'Connell and Communities For Thriving Water and in the Motion For Summary Judgment filed by Defendants and Counterclaimants Kathleen O'Connell and Communities For Thriving Waters-Fluoride Free San Marcos. The City of San Marcos hereby requests the entry of an order granting this Plea to the Jurisdiction and dismissing those claims, in their entirety, for want of jurisdiction.

1

**Appendix - D**

000049

## 1. BACKGROUND

The City of San Marcos filed this case on June 18, 2015 seeking a declaratory judgment that a petition circulated and filed by Defendants and Counter-claimants to place a proposed amendment to the San Marcos City Charter on the ballot at an election in November 2015 is void.

After waiting a month to do so, Sam Brannon, Kathleen O'Connell, and Communities For Thriving Water – Fluoride Free San Marcos (Communities) filed their original answers and counterclaims requesting, among other things, a writ of mandamus to compel Plaintiff and Counter-Defendant, the City of San Marcos, to place their proposed charter amendment on the ballot. On July 23, 2015, Communities and Kathleen O'Connell filed a motion for summary judgment on all of their counterclaims including their counter-claim for mandamus relief. On the same day, they filed a motion requesting the Court to set and hear their motion for summary judgment on an expedited basis on August 5, 2015 with less than 21 days notice to the City.

All pending counterclaims for mandamus relief in this case are based on the contention that the City of San Marcos has a non-discretionary duty imposed by law -- Section 9.004 of the Texas Local Government Code -- to place their proposed charter amendment on the ballot.

## 2. LIMITS ON DISTRICT COURT JURISDICTION

Article 5, §8 of the Texas Constitution, provides, in pertinent part, that:

> "District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, <u>except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body</u>." [Emphasis not in original text].

2

000050

### 3. MANDAMUS JURISDICTION IN ELECTION MATTERS

Section 273.061 of the Texas Election Code grants original jurisdiction to the Texas Supreme Court or a court of appeals to issue a writ of mandamus in election matters. It provides as follows:

**§273.061. Jurisdiction**

"The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer."

In this case, Counter-claimants are seeking a writ of mandamus based upon their contention that the City of San Marcos has a duty imposed by Section 9.004 of the Texas Local Government Code to place their proposed charter amendment on the ballot. Because original jurisdiction to issue such a writ has been granted to the Texas Supreme Court or a court of appeals by the Texas Election Code, this Court has no jurisdiction to grant such relief and it would act in violation of Article 5, §8 of the Texas Constitution if it were to do so. Mandamus relief in such election matters lies exclusively in the appellate courts of this state and not in the district courts. *See*, *Bejarano v. Moody*, 901 S.W.2d 570, 571 (Tex. App. – El Paso 1995, original proceeding).

### 4. ALL COUNTERCLAIMS FOR MANDAMUS RELIEF MUST BE DISMISSED

This Court cannot reach or consider the merits of the pending counterclaims for mandamus relief because it lacks subject matter jurisdiction regarding those claims. Subject matter jurisdiction is essential to a court's power to decide a case. *Texas Association of Business*

3

000051

*v. Texas Air Control Board*, 852 S.W.2d 440, 443 (Tex. 1993). The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction or by a motion for summary judgment. *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A court must not act without determining that it has subject-matter jurisdiction to do so. *Bland, Id*. In this case, it appears from the face of the pleadings that this Court does not have subject matter jurisdiction to issue a writ of mandamus as requested in the counterclaims filed herein by Sam Brannon, Kathleen O'Connell, and Communities For Thriving Water – Fluoride Free San Marcos. The only appropriate action for this Court to take with regard to those counterclaims is to enter an order dismissing them for want of jurisdiction.

WHEREFORE, PREMISES CONSIDERED, Counter-Defendant City of San Marcos, Texas requests that this Plea To The Jurisdiction be set for hearing and considered before any hearing is conducted on the merits of any pending counterclaims for mandamus relief including those contained in the Motion For Summary Judgment filed by Communities For Thriving Water – Fluoride Free San Marcos and Kathleen O'Connell. Counter-Defendant requests the entry of the attached order granting this plea and dismissing all counterclaims for mandamus relief filed in this case by Sam Brannon, Communities For Thriving Water-Fluoride Free San Marcos, and Kathleen O'Connell for lack of jurisdiction.

Respectfully submitted,

SAN MARCOS CITY ATTORNEY'S OFFICE

Sam Aguirre:    Bar No. 00937520
Jacque Cullom: Bar No. 05212050

Assistant City Attorneys

By:    /s/ Michael J. Cosentino
         Michael J. Cosentino, City Attorney
         mcosentino@sanmarcostx.gov

4

000052

Texas Bar No. 04849600
630 East Hopkins
San Marcos, Texas 78666
Telephone: (512) 393-8151
Facsimile:  (855) 759-2846

Attorneys for Plaintiff and Counter-Defendant
City of San Marcos, Texas

CERTIFICATE OF SERVICE

By my signature, below, I certify that on July 29, 2015 a true and correct copy of the foregoing document was served upon counsel for all parties listed below via e-file e-mail in accordance with Texas Rules of Civil Procedure.

/s/ Michael J. Cosentino
Michael J. Cosentino

FOR COMMUNITIES FOR THRIVING WATERS – FLUORIDE FREE SAN MARCOS AND KATHLEEN O'CONNELL

Brad Rockwell
700 Rio Grande, Ste. 200
Austin, Texas 78701
(512) 469-6000
(512) 482-9346 facsimile
Brad@LF-Lawfirm.com

FOR SAM BRANNON

Lynn Peach
174 S. Guadalupe Street, No. 101
San Marcos, Texas 78666
(512) 393-9911
(888) 428-0468 facsimile
lynn@lynnpeach.com

5

000053

FOR MORGAN KNECHT

Craig Young
108 E. San Antonio Street
San Marcos, Texas 78666
(512) 847-7809
(512) 353-1219 facsimile
cyoung@lawyer.com

000054

000055

CASE NO. 15-1266

| | | |
|---|---|---|
| CITY OF SAN MARCOS, TEXAS, | § | |
| *Plaintiff and Counter-Defendant*, | § | |
| | § | IN THE DISTRICT COURT |
| v. | § | |
| | § | |
| COMMUNITIES FOR THRIVING | § | |
| WATER-FLUORIDE FREE SAN | § | |
| MARCOS, KATHLEEN | § | OF HAYS COUNTY, TEXAS |
| O'CONNELL, and SAM | § | |
| BRANNON | § | |
| *Defendants and Counter-claimants*, | § | |
| | § | |
| and | § | 274TH JUDICIAL DISTRICT |
| | § | |
| MORGAN KNECHT, | § | |
| *Defendant*. | § | |

# RESPONSE
# OF COUNTERCLAIMANTS
# COMMUNITIES FOR THRIVING WATER-
# FLUORIDE FREE SAN MARCOS, AND KATHLEEN O'CONNELL
# TO THE CITY OF SAN MARCOS'
# <u>PLEA TO THE JURISDICTION</u>

**TO THE HONORABLE JUDGE OF THE COURT:**

COME NOW Communities for Thriving Water Fluoride-Free San Marcos

("Communities"), and Kathleen O'Connell (collectively "Defendants" or

"Counterclaimants"), and files this response to Counter-Defendant City of San Marcos'

Plea to the Jurisdiction.

**Appendix - E**

000072

# I.
## DISTRICT COURTS HAVE JURISDICTION
## <u>TO ISSUE WRITS OF MANDAMUS IN ELECTION DISPUTES</u>

The City of San Marcos contends that the Court has no jurisdiction over Counterclaimants' claim for a writ of mandamus. The sole authority cited by the City is *Bejarano v. Moody*, 901 S.W.2d 570 (Tex. App. – El Paso 1995, orig. proceeding). *Bejarano*, however, is an outlier, without precedent, that contradicts the rulings of the Supreme Court and other courts. *Bejarno* relied on Election Code § 273.061, which simply says a court of appeal or the Supreme Court "may issue a writ of mandamus . . . in connection with the holding of an election." *Bejarno* interpreted the option provided by section 273.061 as a grant of exclusive jurisdiction, even though the language of the statute does not say the grant of discretionary authority to the appellate courts is exclusive.

The Supreme Court has recognized the right to bring original mandamus proceedings in district court against a governmental entity or government officials. In *Vondy v. Comm'ners Court of Uvalde County*, the Supreme Court upheld the right to bring an original mandamus proceeding in district court against a County Commissioners Court. 620 S.W.2d 104, 109 (Tex. 1981). "[O]riginal mandamus jurisdiction … is vested in the district court." *Id.* The "performance of a clear statutory duty which is ministerial and nondiscretionary should be mandated by the district court. Even in

2

000073

matters involving some degree of discretion," a government entity "may not act arbitrarily." *Id.* (citations omitted).

In *Anderson v. City of Seven Points*, the Supreme Court upheld the original jurisdiction of a district court over a lawsuit where a writ of mandamus was sought against a City and its Mayor over the refusal to order an election requested by a citizens petition. 806 S.W.2d 791, 792-794 (Tex. 1991). "A writ of mandamus will issue to compel a public official to perform a ministerial act [or] to correct a clear abuse of discretion by a public official." *Id.* at 793.

The fact that the Election Code also grants appellate courts original jurisdiction in election cases does not deprive the District Court of jurisdiction.

## PRAYER

For the reasons given above, Counterclaimants Communities for Thriving Waters – Fluoride-Free San Marcos and Kathleen O'Connell ask the Court to deny Counter-Defendant City of San Marcos' Plea to the Jurisdiction.

Respectfully submitted,

/s/ Brad Rockwell
Brad Rockwell
SBT No. 17129600

FREDERICK, PERALES,
ALLMON & ROCKWELL, P.C.
707 Rio Grande St., Ste. 200
Austin, Texas 78701
(512) 469-6000
(512) 482-9346 facsimile

3

000074

brad@LF-lawfirm.com

ATTORNEYS FOR KATHLEEN
O'CONNELL AND
COMMUNITIES FOR
THRIVING WATER –
FLUORIDE FREE SAN
MARCOS

4

000075

**CERTIFICATE OF SERVICE**

By my signature, below, I certify that on August 5, 2015, a true and correct copy of the foregoing document was served *via* e-file e-mail and by hand delivery on the parties below.

/s/ Brad Rockwell
Brad Rockwell

**FOR THE CITY OF SAN MARCOS:**
Michael J. Cosentino
San Marcos City Attorney
630 East Hopkins
San Marcos, Texas 78666
(512) 393- 8151
(855) 759- 2846 facsimile
mcosentino@sanmarcostx.gov

**FOR SAM BRANNON:**
Lynn Peach
174 S. Guadalupe Street, No. 101
(512) 393-9991
(888) 428-0468 facsimile
lynn@lynnpeachlaw.com

**FOR MORGAN KNECHT:**
Craig Young
108 E. San Antonio St.
San Marcos, Texas 78666
(512) 847-7809
(512) 353-1219 facsimile
cyoung@lawyer.com

5

000076

CAUSE NO. 15-1266

FILED

2015 AUG 13 AM 11:44

*Brittney Crumley*

DISTRICT CLERK

HAYS COUNTY, TEXAS

| | | |
|---|---|---|
| CITY OF SAN MARCOS, TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| *Plaintiff and Counter-Defendant* | § | |
| | § | |
| v. | § | |
| | § | |
| SAM BRANNON, COMMUNITIES FOR | § | |
| THRIVING WATER-FLUORIDE FREE | § | OF HAYS COUNTY, TEXAS |
| SAN MARCOS, AND | § | |
| KATHLEEN O'CONNELL | § | |
| | § | |
| *Defendants and Counter-claimants* | § | |
| | § | |
| And | § | |
| | § | |
| MORGAN KNECHT | § | |
| | § | |
| *Defendant* | § | 274TH JUDICIAL DISTRICT |

## ORDER DENYING CITY OF SAN MARCOS' PLEA TO THE JURISDICTION ON COUNTERCLAIMS FOR MANDAMUS RELIEF

On this 12th day of August, 2015, the City of San Marcos' Plea To The Jurisdiction on Counterclaims For Mandamus Relief came before the Court, and the Court finds that the plea should be denied.

IT IS THEREFORE ORDERED that the City of San Marcos' Plea To The Jurisdiction on Counterclaims For Mandamus Relief is denied.

SIGNED AND ENTERED THIS 12th DAY OF August, 2015.

_____

JUDGE PRESIDING

**Appendix - F**

000120



# THE SUPREME COURT OF TEXAS

**Post Office Box 12248**
**Austin, Texas 78711**

(512) 463-1312

September 04, 2015

Mr. Michael John Cosentino
City of San Marcos
630 E. Hopkins
San Marcos, TX 78666

Mr. Craig F. Young
The Young Law Firm
108 E. San Antonio
San Marcos, TX 78666

Mr. Brad Rockwell
Lowerre Frederick Perales
Allmon & Rockwell
707 Rio Grande, Suite 200
Austin, TX 78701

Mr. William M. (Mick) McKamie
McKamie Krueger LLP
941 Proton Road
San Antonio, TX 78258

RE:    Case Number:  15-0632
       Court of Appeals Number:
       Trial Court Number:

Style:  IN RE SHANNON DORN, KATHLEEN O'CONNELL, COMMUNITIES FOR
        THRIVING WATERS - FLOURIDE-FREE SAN MARCOS, AND MORGAN
        KNECHT

Dear Counsel:

The Supreme Court of Texas denied the petition for writ of mandamus on August 28, 2015. *See* TEX. R. APP. P. 52.3(e). Justice Brown, joined by Justice Green, delivered a concurring opinion in the denial of the petition for writ of mandamus. Justice Devine, joined by Justice Lehrmann, delivered a dissenting opinion from the denial of the petition for writ of mandamus in the above-referenced case

Sincerely,

Blake A. Hawthorne, Clerk

by Claudia Jenks, Chief Deputy Clerk

**Appendix -G**

FILE COPY



# THE SUPREME COURT OF TEXAS
**Post Office Box 12248**
**Austin, Texas 78711**

**(512) 463-1312**

# IN THE SUPREME COURT OF TEXAS

════════════
No. 15-0632
════════════

IN RE SHANNON DORN ET AL., RELATORS

══════════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
══════════════════════════════════════════════════

JUSTICE BROWN, joined by JUSTICE GREEN, concurring in the denial of the petition for writ of mandamus.

On August 28, 2015, the Court issued an order denying the relators' petition for writ of mandamus in this case. I write to provide some explanation for that denial and to distinguish this case from a seemingly similar matter on which we recently ruled.

This case concerns the relators' effort to amend the city charter of San Marcos to prohibit the city from using fluoridated water. On April 2, 2015, the relators submitted a petition seeking that the proposed amendment be included on the city's general-election ballot for November 3, 2015. Under section 3.005(c)(2) of the Election Code, the latest date any proposed city charter amendments could be added to the November ballot was August 24, 2015.

On May 5, 2015, the city clerk informed the relators that the petition was invalid because it did not include an oath or affirmation that "the statements were true, that each signature . . . is the genuine signature of the person whose name purports to be signed thereto, and that such signatures

were placed thereon in the person's presence." The parties dispute whether the city charter requires such an oath or affirmation in this instance.

The relators sent letters to the city on May 18 and June 16 insisting that city officials had improperly refused to perform ministerial duties regarding the petition and demanding that they do so immediately. But the relators took no legal action to force the city's hand. Instead, on June 18 the city filed a declaratory-judgment action in district court in Hays County. Despite the looming deadline, the relators waited until July 17 to answer the city's lawsuit and counterclaim for declaratory, injunctive, and mandamus relief—more than ten weeks after the city had refused the petition.

On August 14, the trial court ruled for the relators and ordered the city to review their petition without requiring any affirmation or verification of the signatures. The city filed a notice of appeal the next day, staying any further action by the trial court. On August 21, six days after the city filed its notice of appeal, the relators sought mandamus relief in this Court.

We deploy mandamus as an extraordinary and discretionary remedy, not as a matter of right. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (citing *Callahan v. Giles*, 137 Tex. 571, 575, 155 S.W.2d 793, 795 (1941)). And though mandamus is not an equitable remedy, equitable principles govern its issuance. *Id.* (citations omitted). "One such principle is that '[e]quity aids the diligent and not those who slumber on their rights.'" *Id.* (quoting *Callahan*, 137 Tex. at 576, 155 S.W.2d at 795).

The relators knew on May 5 that the city had refused to consider their petition. Yet with the August 24 statutory deadline less than 16 weeks away, the relators waited more than ten weeks

2

before seeking mandamus relief from the district court. Even then, the relators sought mandamus only in response to the city's request for declaratory relief, and only after the city's lawsuit had been on file for nearly a month. To top it off, it took the relators almost a week to ask for a mandamus from this Court once the city had appealed the trial court's ruling. By then the statutory deadline was just three days away.

The relators have offered no explanation for their failure to diligently pursue the remedies available to them. Instead, they blame the city for employing "procedural maneuvers" and "doing nothing to resolve its claims in a timely manner" once it had filed its lawsuit. But nothing the city did or did not do absolves the relators from their duty to diligently pursue their rights. We will not grant extraordinary remedies to litigants who "slumber on their rights" and then demand expedited relief. *Callahan*, 137 Tex. at 576, 155 S.W.2d at 795; *see also In re Int'l Profit Assocs.*, 274 S.W.3d 672, 676 (Tex. 2009) (per curiam) ("delaying the filing of a petition for mandamus relief may waive the right to mandamus unless the relator can justify the delay").

The relators' failure to diligently pursue relief likewise belies their justification for not first seeking mandamus in the court of appeals. The rules provide that "[i]f [a] petition is filed in the Supreme Court without first being presented to the court of appeals, the petition must state the compelling reason why the petition was not first presented to the court of appeals." Tex. R. App. P. 52.3(e). In this case, the relators assert that because of the impending statutory deadline, they "have a compelling reason to submit this petition to the Supreme Court to secure finality now rather than first going to the Austin Court of Appeals." Yet as the urgency the relators face is of their own making, it is no excuse for skipping past the court of appeals. Moreover, the fourteen courts of

appeals have mandamus jurisdiction for a reason. This Court cannot be the sole arbiter of expedited extraordinary relief in a state of nearly 30 million people spread out across 254 counties.

The dissent draws some comparisons between this case and *In re Woodfill*, ___ S.W.3d ___, 2015 WL 4498229 (Tex. July 24, 2015) (per curiam). In *Woodfill*, we granted mandamus relief to order the City of Houston to either repeal an ordinance or submit it to the voters for approval in the next general election. *Id*. at *7. But *Woodfill* is easily distinguished from this case. For instance, the petition organizers in *Woodfill* gathered their signatures and submitted their petition over a year before the statutory deadline—not less than six months before as the relators in this case. *Id*. at *2. The *Woodfill* petition organizers also sued the city in district court for declaratory and injunctive relief immediately upon its rejection of their petition. *Id*. at *3. In addition, within a week of the city rejecting the petition, the petition organizers filed an original mandamus proceeding in the court of appeals. *Id*. The same day the court of appeals denied that mandamus, the petition organizers filed a supplemental petition in district court, requesting a writ of mandamus from that court. *Id.* These early attempts at extraordinary relief were denied in light of the appellate remedy the petition organizers could pursue once they had obtained a final judgment in their action for declaratory and injunctive relief. *See id*. It was only after that appellate remedy later proved inadequate, and—unlike this case—after we had received full briefing from the petition organizers and the city, that this Court granted mandamus on July 24, 2015. *Id.* at *6–7. The relatively short-lived and sporadic activity in the case at bar bears little resemblance to the protracted and relentless litigation that finally resulted in a mandamus in *Woodfill*.

4

Process matters. Regardless of the merits of their claims, the relators in this case have failed to show, under this Court's well-established rules, principles, and expectations, that they are entitled to the extraordinary relief they seek.

_____
Jeffrey V. Brown
Justice

OPINION DELIVERED: September 4, 2015

REPORTER'S RECORD
VOLUME 3 OF 3 VOLUMES
TRIAL COURT CAUSE NO. 15-1266
COURT OF APPEALS CASE NO. 03-15-00518-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/27/2015 9:16:48 AM
JEFFREY D. KYLE
Clerk

CITY OF SAN MARCOS, TEXAS,   ) IN THE DISTRICT COURT
                               )

         Plaintiff,    )

VS.                      )

                       ) HAYS COUNTY, TEXAS

SAM BRANNON, COMMUNITIES   )
FOR THRIVING             )
WATER-FLUORIDE FREE SAN   )
MARCOS, MORGAN KNECHT AND  )
KATHLEEN O'CONNELL,     )
                       )
     Defendants.   ) 274TH JUDICIAL DISTRICT

-----------------------------

PLEA TO THE JURISDICTION

-----------------------------

On the 12th day of August, 2015, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable R. Bruce Boyer, Judge presiding, held in San Marcos, Hays County, Texas; Proceedings reported by machine shorthand.

**Appendix- H**

A P P E A R A N C E S

FOR THE PLAINTIFF:

    Mr. Michael J. Cosentino
    City Attorney - City of San
    Marcos
    630 East Hopkins
    San Marcos, Texas 78666
    SBOT: #04849600
    Phone: (512) 393-8153
    Fax: (512) 393-3983
    mcosentino@sanmarcostx.gov


FOR THE DEFENDANTS, COMMUNITIES FOR THRIVING
WATER-FLUORIDE FREE SAN MARCOS AND KATHLEEN O'CONNELL:

    Mr. Bradley L. Rockwell
    FREDERICK, PERALES, ALLMON &
    ROCKWELL, P.C.
    707 Rio Grande
    Suite 200
    Austin, Texas 78701
    SBOT: #17129600
    Phone: (512) 469-6000
    Fax: (512) 482-9346
    Brad@LF-Lawfirm.com


FOR THE DEFENDANT, SAM BRANNON:

    Ms. S. Lynn Peach
    LAW OFFICE OF LYNN PEACH
    174 S. Guadalupe Street
    No. 101
    San Marcos, Texas 78666
    SBOT: #00792746
    Phone: (512) 393-9991
    Fax: (888) 428-0468
    Lynn@lynnpeachlaw.com

FOR THE DEFENDANT, MORGAN KNECHT:

Mr. Craig F. Young
THE YOUNG LAW FIRM
108 E. San Antonio Street
San Marcos, Texas 78666
SBOT: #00786367
Phone: (512) 847-7809
Fax: (512) 353-1219
Cyoung@lawyer.com

5

(Proceedings had which are not herein transcribed)

MR. COSENTINO: All right. Your Honor, if the Court has concluded ruling on the evidentiary matters and the affidavits, may we be heard as to questions of jurisdiction in this case?

THE COURT: Yes, sir.

MR. COSENTINO: All right. Your Honor, we -- we did present our original plea to the jurisdiction on July the 29th. We've -- we've had some correspondence with the Court about the particular holding -- or whether there's a holding in the case -- the *Seven Points* case.

Mister -- Mr. Rockwell has asserted that somehow the -- a statement in a footnote in the *In Re Woodfill* case has arisen to a holding in that case. We -- we contend that it's not. But -- so we do stand behind our plea to the jurisdiction.

We've also reserved, Your Honor, the right to object further about jurisdictional issues as to mandamus only, Your Honor, in our -- in our reply.

And, Your Honor, the pleadings in this case are all about the City of San Marcos has a ministerial duty; the City of San Marcos refused to put it on the ballot. And, Your Honor, every one of the cases that

have been cited here by the counter-claimants in this case where a mandamus issued were cases that were properly filed against public officials.

There's no public official in this case. The city clerk isn't a party in this case. The city council members aren't parties in this case.

So in *Coalson*, in *In Re Roof*, in the *Blum versus Lanier* case, and in the *Woodfill* case decided by the Supreme Court on July the 24th, the parties before the Court, whether it was in the trial court or the -- or the Supreme Court or the Court of Appeals, were public officers.

They've cited a case, the *Vondy* case, last week which -- which involved a request by a constable to set a reasonable salary. But the parties in that case, Your Honor, were the commissioners court of Uvalde County and three out of four of the county commissioners.

You have no city council members joined in this case. The city clerk isn't in this case.

So, Your Honor, we -- we still contend that where this case sits right now, that this court has no jurisdiction to issue a writ of mandamus against the City of San Marcos. And that's the only party that's before the Court today.

misspoke, Your Honor. That particular section -- we have it verbatim, Judge, in our plea to the jurisdiction. We copied it as we quoted it.

THE COURT: Subchapter D: Mandamus by Appellate Court, 27 -- excuse me -- 273.061: Jurisdiction.

"The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer."

Last time I checked, "may" meant discretionary. "Shall" would be required.

MR. COSENTINO: Understood, Your, Honor.

THE COURT: You're arguing this section makes it exclusive jurisdiction to the appellate courts?

MR. COSENTINO: We're -- we're -- that is -- that is our argument based on the Constitution. But moreover, Your Honor, the reason why that language -- if you look at the last -- the last -- the last phrase of that, regardless of whether the person is a public officer.

District court jurisdiction to issue mandamus generally, right -- generally, is to compel a

public officer to -- to perform a duty required by law.

There are no public officers before this court. So independent of the -- of the matter raised last week, what we've raised in our -- in our response today, Your Honor, they want a mandamus issued against the City of San Marcos, which, undisputed, is a home-rule municipal corporation. It's not a public officer.

So independent of 273.061, Your Honor, we would -- we would -- we would contend that the Court doesn't have jurisdiction to issue a mandamus in this case against these parties at this time.

MR. ROCKWELL: Your Honor, I'm -- apologize. I have to rely on my memory, but I believe it was Friday. We dropped off a one-page brief and a couple cases specifically addressing the mandamus issue.

One case was *Anderson.* And there was a more recent case -- I can't remember the name of it, but I think it might have come out this year -- from the Texas Supreme Court. And the Texas Supreme Court case was directly on point. They both were, and they both recognize that trial courts have authority to order mandamus relief over election issues, and that the provision that was cited by opposing counsel for appellate court jurisdiction was in addition to the

trial court jurisdiction, which also exists, the difference being a trial court can make findings of fact and -- and decide disputed fact issues, where an appellate court cannot do that in a mandamus proceeding.

And I believe at least one of those cases, if not both of them, involved a city as a -- as a defendant -- yeah, here it is. I'm sorry. It was brought to me.

The -- I believe the 2015 case was against a city council. And the -- which is a governmental body.

And the -- and the *Anderson* case --

THE COURT: That's the *City of Seven Points*, is it not?

MR. ROCKWELL: Pardon?

THE COURT: *City of Seven Points,* is it not?

MR. ROCKWELL: Yeah, *City of Seven Points*.

So that was also -- the City was a party, and the mandamus was what was requested and granted. And both those cases acknowledged that a mandamus is a relief available in trial court for exactly these kinds of election issues.

MR. COSENTINO: And, Your Honor, the counterclaims that are on file in this case allege that

the City of San Marcos refused to put it on the ballot. They complain about the city clerks not counting the -- the signatures on the ballot, but they're not seeking any mandamus relief against the city clerk in this case, either, Your Honor.

So, you know, the -- the *Woodfill* case is -- is remarkable in a couple of -- couple of ways. In that case, Your Honor, the Supreme Court disregarded the findings of a jury as to the number of valid signatures, disregarded the findings of the trial court regarding the number of signatures, and pretty much held that -- that because the city secretary or city clerk in the City of Houston said that there were enough signatures, that -- that that was dispositive. And that was the grounds for the mandamus issued in that case.

Here, we don't have those facts. We have a city clerk who -- who certified that none of the signatures may be counted.

So I don't think the *Woodfill* case is authoritative here, Your Honor. And I -- we just -- we would like this court to -- to issue a ruling that -- you know, that is -- that's binding and final. But we don't think that because there's not been a suit filed against the city clerk or the city council members here that a mandamus issues here. We don't think the trial

court's jurisdiction to issue a mandamus extends to a situation where there's not a public officer before it.

And, Your Honor, they -- there's no secret here about -- about the city clerk's certification. It happened on May the 5th.

They've had since May the 5th or May the 6th to -- to seek mandamus relief in the appropriate court, and they -- and to join the right parties, and they have not done so.

MR. ROCKWELL: Your Honor, the primary section that we're seeking relief under is Local Government Code Section 9.004. And the duty imposed there is on the governing body, not an individual clerk or not individual city council members. It's the City itself that has the duty to put the charter amendment on the ballot.

And that's what -- that's the request we're asking for pursuant to 9.004, that the -- the City put the measure on the ballot, not -- not a specific request just to the clerk.

MR. COSENTINO: Begging Mr. Rockwell's pardon, Your Honor, the statute in question says "the governing body." And he hasn't sued the governing body.

THE COURT: He has not sued the government body by naming the City of San Marcos?

MR. COSENTINO: Correct, Your Honor. The mandamus lies against a public officer to perform the non-discretionary duty. And he -- you know, he didn't bring the city council members here as council members. He didn't sue the city clerk here.

All those other cases that the Supreme Court has ruled on have been cases where there was a suit against a public officer. And even the case that they cited last week, that Uvalde case, they sued the commissioners court of Uvalde County and three out of the four commissioners.

Now, the court in that -- in that case said three out of four commissioners is enough, but they had the county commissioners [sic] and three county commissioners named in the case.

They're not before the Court. They can't be -- they can't be served. They can't be sued and served in time for -- for the August 24th deadline here.

That's not a situation we created, Your Honor. This -- this is -- on the face of the pleadings, the Court doesn't have jurisdiction to issue a mandamus here.

MR. ROCKWELL: And, Your Honor, this is a situation they created. It was the City that brought